IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re CONCENTRIC ENERGY CORP.,<br><br>Debtor. | Involuntary Chapter 7<br>Case No. 10-bk-18796-SSC<br>(Not for Publication- Electronic Docketing ONLY)<br>MEMORANDUM DECISION |

I. PRELIMINARY STATEMENT

Concentric Energy Corp., the Debtor, filed a Motion to Dismiss the involuntary chapter 7 petition on July 12, 2010, alleging, *inter alia,* that John P. O'Shea, Richard Louise, AWM Holding, LLC, David R. Holbrooke, and Blue Sky Securities, Ltd., (the "Creditors") did not have standing under 11 U.S.C. § 303(b) to proceed. This Court heard oral argument on the Motion to Dismiss on August 26, 2010. At that hearing, this Court expressed concern that the Creditors had brought an involuntary petition based on obligations that were arguably not yet due and owing, and directed the Creditors to brief the issue further. Specifically, this Court asked the Creditors to provide case law supporting the proposition that they had standing to file an involuntary petition. Upon further briefing from both the Creditors and the Debtor, this Court took the matter under advisement.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C.

1

§§ 1334(b) and 157(b) (West 2010).

## II. BACKGROUND

The Debtor is a mineral resources company with one exploration property, known as the Anderson Mine, located in Yavapai County, Arizona, which it controls through a series of mineral claims. The Anderson Mine contains a significant cache of uranium and vanadium mineralization.

The Creditors apparently purchased 15% cumulative convertible debentures (the "Debentures") offered by the Debtor in conjunction with three private placement offerings of common stock. The terms of the Debentures were governed by a 15% Cumulative Convertible Debenture (the "December 31 Debenture") executed around December 31, 2008, that had a maturity date of December 31, 2012. The December 31 Debenture contained a series of Events of Default, along with an Acceleration Clause connected to those events.

On April 16, 2010, Global Uranium Corporation ("Global") issued a press release announcing that it had executed a joint venture agreement with the Debtor. The press release indicated that through the joint venture, Global could potentially acquire the right to incrementally earn up to a 70% interest in the unpatented lode mining claims located in the Anderson Mine. The press release did not indicate whether Global (and/or Debtor) planned to repay the Debentures.

On June 16, 2010, in response to the proposed joint venture and other alleged misconduct, the Creditors filed an involuntary bankruptcy petition against the Debtor. The Creditors claimed that the Debtor engaged in various Events of Default and other breaches of the December 31 Debenture that entitled them to accelerate payment of the Debentures, making all of the Debentures due and payable immediately.

## III. DISCUSSION

2

1    The preliminary issue before this Court is whether the Creditors, as holders of the
2 Debentures that are not contingent as to liability, but have not yet matured, have standing to bring
3 an involuntary petition pursuant to 11 U.S.C. § 303(b).  The Court concludes that the Creditors
4 do have standing; however, because the Debtor is also challenging whether the Creditors may
5 meet their burden of proof under §303(h)(1) and whether the Creditors filed the petition in good
6 faith (See §303(i)), the Court must set a further hearing on this matter.

7    In order to commence an involuntary petition, creditors must meet the standing
8 requirements of 11 U.S.C. § 303(b)(West 2010).  Specifically, if the putative debtor has 12 or
9 more creditors, at least three or more creditors holding claims aggregating at least $14,425 more
10 than the value of any lien on any property securing such claims must join to file the involuntary
11 petition.  Id.  Moreover, the claims must not be "contingent as to liability" and must not be "the
12 subject of a bona fide dispute as to liability or amount."  Id.

13   The parties in this case do not dispute that the Creditors' claims against the
14 Debtor aggregate at least $14,425 in excess of any security for any of the claims, and that the
15 claims are not contingent as to liability.  This Court's inquiry, therefore, focuses solely on
16 whether any of the claims are in bona fide dispute as to liability or amount.

17   The phrase "bona fide dispute" is not defined in the Bankruptcy Code.  However,
18 courts have held that a claim is subject to bona fide dispute if there is "an objective basis for
19 either a factual or legal dispute as to the validity of the debt."  In re Vortex Fishing Systems, Inc.,
20 277 F.3d 1057, 1064 (9th Cir. 2001) (internal quotations omitted).  In this matter, the Debtor
21 contends that the Creditors' claims are subject to bona fide dispute, because the claims have
22 either not matured, or at least, there is a bona fide dispute as to the maturity of the claims.  The
23 Creditors counter that the passage of time alone does not cause their claims to be in bona fide
24 dispute as to liability or amount.

25   The Creditors rely on the decision of In re Federated Group, Inc., 107 F.3d 730
26 (9th Cir. 1997), in support of their position. In that case, the Ninth Circuit refused to dismiss an

3

involuntary petition brought by debenture holders whose claims would not be due and payable until 2019. Federated Group, 107 F.3d at 731. The Ninth Circuit's analysis in Federated Group focused on whether there was a sufficient number of petitioning creditors to file the involuntary petition. Id. at 732-33. Although the Ninth Circuit did not discuss whether the debenture holders' claims were the subject of a bona fide dispute, this Court still finds Federated Group instructive. Presumably such a fundamental issue as standing would have been reviewed by the parties and or the Circuit and raised as an issue, particularly since the debenture holders obligations would not mature for another twenty years or more. The Ninth Circuit's only comment on the creditors' claims, however, was that the debenture agreement in that case gave them "an absolute and unconditional right to payment." Id. at 732. Since there was no discussion, at least there is some support for the Creditors' argument that an obligation that has not yet matured is not in bona fide dispute as to liability or amount. Nothing in the Federated Group opinion suggests that the Ninth Circuit was concerned that the maturity date, at least twenty or more years away, might affect the standing of the petitioning debenture holders.

        Moreover, §303(b) does not require that the obligation be in default. For instance, if a secured creditor had a lien on certain property, but that property was insufficient to pay the secured creditor in full, the secured creditor could join as a petitioning creditor so long as the deficiency, or the amount by which it was unsecured, was at least $13,475.[1] The concept of a bona fide dispute, thus, focuses on whether there is a "real" or "good faith" dispute as to the

---

**1.** Section 303(b) provides, in pertinent part, as follows:
"An involuntary case against a person is commenced by the filing with the bankruptcy court of petition under chapter 7 or 11 of this title--
    (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, . . . if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims."
11 U.S.C. §303(b)(1)(West 2010).

Case 2:10-bk-18796-SSC    Doc 59    Filed 12/21/10    Entered 12/21/10 18:06:07    Desc
Main Document    Page 4 of 7

liability of the debtor, or the amount owed by the debtor, to the creditor.² In turn, the definition of "liability" does not require that a particular debt be accelerated or in default, only that it be "a note payable or a long-term debenture."³ Thus, this Court concludes that the plain language of §303(b)(1) would permit the Creditors to join as petitioning creditors in this case.

The Debtor, however, relies on the decision of Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC), 330 F.3d 111 (2d Cir. 2003) in support of its assertion that a creditor holding an unmatured claim (or at least one subject to a bona fide dispute regarding maturity) cannot overcome the § 303(b) standing issue to proceed with the case.⁴ In Key Mechanical, however, the creditor had not yet fulfilled certain contractual prerequisites to payment of its claim. Key Mechanical, 330 F.3d at 120-21. The debtor hotel, BDC, had initially entered into a contract with the general contractor concerning the construction of the hotel. A separate agreement between the general contractor and the various subcontractors that assisted in the construction of the hotel required that the subcontractors first pursue a lien action against the hotel prior to requesting payment. Various subcontractors on the hotel project were not timely paid. Id. at 114. One of the subcontractors, DWF, Inc., had not pursued a lien action against the hotel prior to demanding payment.⁵ Id. at 121. The Second Circuit stated that because DWF

---

**2.** Webster's New World College Dictionary, 4th Ed. (Wiley Publishing, Inc. 2005) at p.165.

**3.** Id. at p.825.

**4.** The Court notes that the Second Circuit abrogated one of the key holdings in Key Mechanical when it concluded that the requirements of Section 303(b) were substantive, not jurisdictional. In re Zarnel, 619 F.3d 156, 167 (2d Cir. 2010).

**5.** The subcontractor argued that it was only required to file a lien action if there was no merger of the interest of the hotel and the general contractor. Because of the nonperformance of the general contractor, the hotel had declared a default under its contract with the general contractor, and had assumed the rights and responsibilities of the general contractor vis a vis the subcontractors. Thus, the subcontractor argued that the term in the underlying contract requiring the subcontractor to sue the hotel, and obtain a lien against the hotel, before pursuing the general contractor appeared of no force and effect, since the hotel and the general contractor had become

5

had not pursued the lien action, even though the hotel had become the general contractor on its own construction project, DWF's debt was subject to bona fide dispute. Id.

Although the Second Circuit stated, in Key Mechanical, that the DWF claim had not yet "matured," the essential issue was whether DWF had fulfilled all of the prerequisites to liquidate its claim against BDC. Contracts, of course, may be drafted with conditions precedent or conditions subsequent that must be fulfilled prior to one or more of the parties to the contract being considered to have fully performed thereunder. Although the Second Circuit did state that the DWF claim had not yet "matured," this Court must consider the context in which such language was utilized by the Second Circuit. In essence, DWF had not fulfilled one of the prerequisites under the contract; that is, the commencement of an action against the hotel to obtain a lien on its property, before requesting payment. Such a condition precedent was required before DWF could request payment. Therefore, the DFW debt was in bona fide dispute.[6] Here, there are no such requirements. The Creditors will receive payment at some point whether they "do" something or not. This Court finds that the claims of the Creditors in this case are not subject to bona fide dispute as to liability or amount, regardless of whether they are currently due. The Court finds that the passage of time, the only element existing between the Creditors and their demand for immediate payment, does not create a bona fide dispute as to liability or amount. The Creditors qualify as petitioning creditors in this case. .

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Creditors have standing to

---

the same party. The Second Circuit disagreed with the reasoning.

**6.** The Bankruptcy Code has been amended since the Key Mechanical decision. Section 303(b) previously focused on whether the debt of the petitioning creditor was in "bona fide dispute." The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 now states that the debt of a petitioning creditor must not be in bona fide dispute "as to liability or amount." See 11 U.S.C. §303(b)(1)(West 2010).

6

file this involuntary petition under § 303(b). This Court will set a further hearing, by separate notice, to determine the remaining issues under § 303, Subsections (h) and (i).

DATED this 21st day of December, 2010.

*[signature]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

7